[No. C012608. Third Dist. Apr. 23, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY EUGENE McGEE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III and V.

**COUNSEL**

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, J.**—During an argument, defendant stabbed the victim with a knife. A jury convicted defendant of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) and found true the allegation he used a deadly weapon in the commission of the offense (Pen. Code, § 12022, subd. (b); further section references are to the Penal

Code unless otherwise specified). The jury was unable to reach a verdict on a charge defendant forcibly resisted an executive officer in the performance of the officer's duty (§ 69), and that charge was later dismissed. Defendant was sentenced to the upper term of four years for the section 245 conviction plus one year for the weapon use enhancement. The court then found this was an unusual case, suspended execution of sentence, and granted defendant probation. He appeals.

■■■ As we shall explain in the published portion of this opinion, we agree with defendant that the weapon use enhancement must be stricken because section 12022, subdivision (b) precludes the enhancement where, as in this case, use of a deadly weapon is an element of the offense of which the accused is convicted. We recognize that, in the abstract, use of a deadly weapon is not an element of assault by means of force likely to produce great bodily injury because the offense may be committed without using a deadly weapon. However, if this were the test applied to a violation of section 245, subdivision (a)(1), which encompasses two forms of prohibited conduct (assault with a deadly weapon other than a firearm *or* assault by means of force likely to produce great bodily injury), prosecutors could evade the exception to imposition of a deadly weapon use enhancement set forth in section 12022, subdivision (b)—and thereby increase the punishment to be imposed for an assault with a deadly weapon other than a firearm—simply by charging the crime as an assault by means of force likely to produce great bodily injury and alleging a deadly weapon use enhancement. This the prosecution cannot do because section 245, subdivision (a)(1) defines only one offense. "The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 [83 Cal.Rptr. 809, 464 P.2d 473].) Hence, the conduct of the accused, rather than the prosecution's pleading, determines whether use of a deadly weapon is an element of a section 245, subdivision (a)(1) conviction. Here, defendant's stabbing of the victim with a knife constituted the assault by means of force likely to produce great bodily injury. Therefore, his use of the deadly weapon was an element of the offense, and the weapon use enhancement must be stricken.

In the unpublished portions of this opinion, we reject defendant's contentions that the trial court abused its discretion in denying defendant's motion to sever the assault charge from the resisting allegation, erred in admitting evidence that the assault victim's brother was intimidated and battered in an effort to dissuade the victim from testifying, and abused its discretion in imposing the upper term for the section 245 conviction. We also reject defendant's claim that the judgment must be reversed because the evidence

discloses he acted in self-defense as a matter of law. Accordingly, we shall strike the weapon use enhancement and affirm the judgment as modified.

## FACTS

Viewed in the light most favorable to the judgment (*People v. Bloyd* (1987) 43 Cal.3d 333, 346-347 [233 Cal.Rptr. 368, 729 P.2d 802]), the evidence established the following:

On the evening of February 8, 1991, several people were at the home of Dallas Hall and Michele Bennett for an impromptu birthday celebration. Defendant came by to visit with Hall around 9 p.m. Bill Graham, the victim, arrived approximately 30 minutes later. As Graham entered the house, defendant asked him for a beer. Graham replied that the beer he had in his hand was his last one. According to Graham, defendant "got smart, and I got smart, and then it went on like that."

Graham went outside to have a cigarette, and defendant followed him. They continued arguing about defendant wanting a beer and Graham not having one for him. The argument escalated into a physical confrontation, and Hall tried unsuccessfully to break up the fight.

When Graham directed racial slurs at him, defendant responded, "You're going to die," and reached into his back pocket. With his left hand, defendant threw his motorcycle gloves at Graham; with his right hand, he appeared to punch Graham in the left ear. Although Graham did not know it at the time, the top of his ear and the area behind it had been sliced open by defendant.

Graham struck back, and the two men continued hitting one another for several minutes. Although Graham is smaller than defendant, he managed to force defendant down on his hands and knees. Graham continued to hit and knee defendant because he kept coming at Graham.

Both Hall and Graham's brother noticed defendant thrusting his arm up toward Graham. After Graham landed a few more blows, defendant (who had a bloody nose and lip) said he had had enough, and Graham backed away.

Graham went to his car where he noticed the front of his shirt was covered with blood. He exclaimed that defendant had stabbed him, and Hall observed a folding lock-blade knife open on the ground where Graham and defendant had been fighting. Upon learning his brother had been stabbed, Roger

Graham heaved a beer bottle at defendant, hitting him in the head and cutting him above the eye.

The victim was taken to a hospital where it was determined he had been stabbed several times in the chest and once on the left ear. He remained in the hospital for four days and was treated for a collapsed lung.

Defendant did not testify at trial, but his attorney argued defendant acted in self-defense.

Because the facts underlying the charge of forcibly resisting an executive officer are pertinent only to defendant's contention that the trial court erred in denying his severance motion, they will be summarized in part I, *post* [unpub. pt. of opn.].

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

Defendant contends the trial court erred in failing to strike the section 12022, subdivision (b) enhancement because use of a deadly weapon is an element of the offense of which he was convicted.

Section 12022, subdivision (b) provides in pertinent part: "Any person who personally uses a deadly or dangerous weapon in the commission . . . of a felony shall, upon conviction of such felony . . . be punished by an additional term of one year, *unless use of a deadly or dangerous weapon is an element of the offense of which he or she was convicted.*" (Italics added.)

Defendant was charged with violating section 245, subdivision (a)(1) by assaulting the victim "with a deadly weapon, to wit, [a] knife, *and* by means of force likely to produce great bodily injury." (Italics added.)[2] At trial, defendant initially suggested that, because his sentence could not be enhanced under section 12022, subdivision (b) for an assault with a deadly weapon other than a firearm, the prosecution must make an election, i.e.,

---

*See footnote, *ante*, page 107.

[2]Section 245, subdivision (a)(1) provides in pertinent part: "Every person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison . . . ."

either defendant assaulted the victim with a deadly weapon or assaulted the victim by means of force likely to produce great bodily injury. Thereafter, defendant moved to strike the enhancement because use of a deadly weapon is an element of the crime charged against him.

After noting case law appeared to support defendant's contention that the enhancement could not be imposed on an assault with a deadly weapon, the prosecutor asked the court to amend the jury instructions, and implicitly to amend the information, to charge defendant only with assault by means of force likely to produce great bodily injury, deleting the deadly weapon portion of the section 245, subdivision (a)(1) charge. The court complied. The jury then convicted defendant of assault by means of force likely to produce great bodily injury and found he used a deadly weapon in the commission of the offense. The court sentenced defendant to the upper term of four years on the assault charge and an additional one year for the section 12022, subdivision (b) enhancement, but suspended the execution of sentence and granted defendant probation.

Defendant asserts the enhancement must be stricken because the court impermissibly allowed the prosecutor to plead around the exception set forth in section 12022, subdivision (b) by deleting the deadly weapon allegation in the charge that he violated section 245, subdivision (a)(1). He argues this maneuver subjected him to an enhancement which otherwise could not be imposed. We agree the enhancement must be stricken.

As we have noted, a deadly weapon use enhancement under section 12022, subdivision (b) cannot be imposed when use of a deadly weapon is an element of the offense of which an accused is convicted. In determining whether defendant's use of a deadly weapon was an element of section 245, subdivision (a)(1), within the meaning of section 12022, subdivision (b), we must apply fundamental rules of statutory construction. ▮ Sections of the Penal Code must be construed "according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4.) " 'Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction.' [Citation.] If ambiguity is found, the statute is to be interpreted 'in the light of the objective sought to be achieved by it, as well as the evil sought to be averted.' [Citation.]" (*In re Andrews* (1976) 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97].)

In addition, "if a statute is susceptible to more than one interpretation, we must adopt the reasonable meaning and reject that which would lead to an

unjust and absurd result. [Citations.] Even if the language of the statute is unambiguous, it ' "should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' [Citations.] 'Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' [Citations.]" (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

One appellate court has interpreted the phrase "element of the offense" to mean "an essential component of the legal definition of the crime *considered in the abstract*." (*People* v. *Read* (1983) 142 Cal.App.3d 900, 903 [191 Cal.Rptr. 305], italics added.) Another court has interpreted section 12022, subdivision (b) as "requiring enhancement if a deadly weapon is used in the particular case, *unless the kind of offense of which defendant was convicted cannot be committed without such use*." (*In re Anthony H.* (1980) 108 Cal.App.3d 494, 499 [166 Cal.Rptr. 607], italics added.)

Section 245, subdivision (a)(1) speaks in the alternative, specifying two forms of prohibited conduct. The statute can be violated by assaulting a person with a deadly weapon other than a firearm *or* by means of force likely to produce great bodily injury. (See fn. 2, *ante.*) Hence, section 245, subdivision (a)(1) can be violated without necessarily using a deadly weapon. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 419, pp. 480-481 and cases cited therein.) Accordingly, strict adherence to the interpretation of section 12022, subdivision (b) set forth in *Anthony H.* would lead to the conclusion that use of a deadly weapon is not an element of section 245, subdivision (a)(1) when the accused is charged with violating the statute by assaulting the victim by means of force likely to produce great bodily injury. However, the language used in *Anthony H.* is limited by the facts of that case. There the accused was convicted of attempted robbery and used a knife in the commission of the offense. The use of a deadly weapon is not an element of the crime of robbery. (§ 211; *People* v. *Cortez* (1980) 103 Cal.App.3d 491, 496 [163 Cal.Rptr. 1].) The fact the accused used a knife to elicit the requisite force or fear which is an essential element of robbery did not and could not transform his use of the knife into an essential element of the crime.

 In contrast, here defendant was convicted of violating section 245, subdivision (a)(1). This section "defines only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument [other than a firearm] or by any means of force likely to produce great bodily injury . . . .' The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*Mosley, supra*, 1 Cal.3d at p. 919, fn. 5.) Consequently,

in determining whether use of a deadly weapon other than a firearm is an element of a section 245, subdivision (a)(1) conviction, the question is not simply whether, in the abstract, the section can be violated without using such a weapon. Rather, the conduct of the accused, i.e., the means by which he or she violated the statute, must be considered.

*People* v. *Ferguson* (1970) 7 Cal.App.3d 13 [86 Cal.Rptr. 383] is instructive. In *Ferguson,* the accused was convicted of first degree burglary which required, in the alternative, (1) the burglary was of an inhabited house in the nighttime, or (2) the burglar was armed with a deadly weapon, or (3) the burglar committed an assault. (Former § 460; 7 Cal.App.3d at p. 17.) The court did not simply determine that use of a deadly weapon was not an element of first degree burglary within the meaning of section 12022 because the offense could be committed without necessarily using a deadly weapon. Instead, the court examined the conduct of the accused and found that use of a deadly weapon was not an essential element under the facts of that case because the burglary was of an inhabited dwelling in the nighttime. Hence, the burglary was first degree whether or not the defendant was armed. (Former § 460; 7 Cal.App.3d at p. 17.)

Here, defendant's use of a deadly weapon other than a firearm was the sole means by which he violated section 245, subdivision (a)(1). The assault by means of force likely to produce great bodily injury was defendant's stabbing of the victim with a knife. Hence, his use of this deadly weapon was an element of the offense, within the meaning of section 12022, subdivision (b), even though the crime was pleaded as an assault by means of force likely to produce great bodily injury rather than as an assault with a deadly weapon other than a firearm.

We acknowledge it is possible for an accused to be found guilty of violating section 245, subdivision (a)(1) by assaulting the victim with means of force likely to produce great bodily injury and also be found to have used a deadly weapon within the meaning of section 12022, subdivision (b). Where the accused has simply displayed a deadly weapon to cause the victim not to resist an assault by some other force likely to produce great bodily injury, the menacing display of the weapon would be sufficient to prove use of a deadly weapon under section 12022, subdivision (b) but not necessarily sufficient to prove assault with a deadly weapon under section 245, subdivision (a)(1). (Cf. *People* v. *Wolcott* (1983) 34 Cal.3d 92, 102 [192 Cal.Rptr. 748, 665 P.2d 520].) However, this is not the case here, where the force likely to produce great bodily injury was defendant's use of the deadly weapon, a knife.

■ Our interpretation is consistent with the legislative intent underlying section 12022. This intent was addressed by the California Supreme Court in

*In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417], a case in which the court held the increased punishment set forth in the Deadly Weapon Act (which now is included in § 12022) was not applicable to a conviction of assault with a deadly weapon (former § 245) where being armed was a necessary element of the offense. (*Id.*, at pp. 749-751; see also *People v. Floyd* (1969) 71 Cal.2d 879, 882-883 [80 Cal.Rptr. 22, 457 P.2d 862]; *People v. Moreno* (1982) 128 Cal.App.3d 103, 109-110 [179 Cal.Rptr. 879]; *People v. Waters* (1973) 30 Cal.App.3d 354, 362 [106 Cal.Rptr. 293].)[4] The court stated: "It is not unreasonable to suppose that the Legislature believed that for felonies in which the use of a [deadly weapon] was not one of the essential factors, such as rape, larceny, and the like, an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon. Hence, such a condition would be reasonable grounds for increasing the penalty where felonies are involved which do not include as a necessary element being armed with a [deadly weapon]. The Legislature has by other acts imposed an increased punishment where the only additional factor, being armed with a deadly weapon, is present. The only difference between a simple assault and one with a deadly weapon is the latter factor. . . . Briefly, the Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed." (*Shull, supra*, 23 Cal.2d at pp. 750-751.)

As we have noted, defendant assaulted the victim by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(1) by stabbing the victim with a deadly weapon. Therefore, defendant's use of the deadly weapon was not an additional factor, above and beyond the elements of section 245, subdivision (a)(1) which would permit imposition of a weapon use enhancement under section 12022, subdivision (b). Accordingly, the exception to the imposition of a weapon use enhancement set forth in section 12022, subdivision (b) applies.

The prosecutor attempted to evade the statute's exception and to increase the punishment imposed on defendant simply by deleting the assault with a

---

[4]*Shull, Floyd* and *Waters* were decided prior to the amendment of section 12022 in 1977. Before amendment, section 12022 provided an additional term of imprisonment where a person committed or attempted to commit a felony while *armed* with a deadly weapon. (Stats. 1968, ch. 1386, § 1, p. 2720.) The amendment added subdivision (b), regarding additional punishment for *use* of a deadly weapon, and changed what is now subdivision (a) to provide for additional punishment where the person is armed with a firearm. (Stats. 1977, ch. 165, § 9, p. 678.) Furthermore, the amendment added for the first time that the enhancement would apply unless such arming or use of a deadly weapon "is an element of the offense" of which the person is convicted. (*Ibid.*)

deadly weapon allegation and by calling the charged offense assault by means of force likely to produce great bodily injury. However, as we have explained, section 245, subdivision (a)(1) defines only one offense. "The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*Mosley, supra*, 1 Cal.3d at p. 919, fn. 5.) If prosecutors were permitted to divide section 245, subdivision (a)(1) into two separate offenses regardless of the defendant's conduct, as did the prosecutor in this case, similarly situated defendants who assaulted their victims with deadly weapons other than firearms and were charged with violating section 245, subdivision (a)(1) could receive disparate punishment depending solely upon the language used in the pleadings. The one accused of assault with a deadly weapon would not be subject to the enhancement under section 12022, subdivision (b) while the one accused of assault by means of force likely to cause great bodily injury would be subject to the additional punishment. This is an absurd and unjust result which is inconsistent with the legislative intent in enacting sections 245, subdivision (a)(1) and 12022, subdivision (b).

The People do not dispute that the trial court erred in enhancing defendant's sentence pursuant to section 12022, subdivision (b). Instead, they argue defendant waived or invited the error, or is estopped from raising it, because he suggested the prosecutor must elect whether the charged assault was committed with a deadly weapon or by means of force likely to cause great bodily injury, and because he failed to object to the amended pleadings and instructions.

However, the error is not one of an impermissible amendment to the pleadings or an improper instruction. The error is an unauthorized sentence enhancement. " 'It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court.' " (*People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1163-1164 [261 Cal.Rptr. 93], quoting *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12]; see also *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 718-719 [124 Cal.Rptr. 418].) Accordingly, the People's argument is without merit, and the section 12022, subdivision (b) enhancement must be stricken.

V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 107.

## DISPOSITION

The section 12022, subdivision (b) use enhancement is stricken. As modified, the judgment is affirmed.

Sparks, Acting P. J., and Sims, J., concurred.